MISSION VIEJO COMPANY, a California corporation; Highlands Ranch Development Corporation, a Colorado corporation; and Centennial Water and Sanitation District, a quasi-municipal corporation and political subdivision of the State of Colorado, Objectors–Appellants,

v.

WILLOWS WATER DISTRICT, a quasi-municipal corporation and political subdivision of the State of Colorado, Applicant–Appellee.

MISSION VIEJO COMPANY, a California corporation; Highlands Ranch Development Corporation, a Colorado corporation; and Centennial Water and Sanitation District, a quasi-municipal corporation and political subdivision of the State of Colorado, Plaintiffs–Appellants,

v.

WILLOWS WATER DISTRICT, a quasi-municipal corporation and political subdivision of the State of Colorado, Defendant–Appellee.

Nos. 90SA217, 90SA218.

Supreme Court of Colorado,
En Banc.

Sept. 16, 1991.

(Willows), may be issued permits for additional wells withdrawing nontributary ground water underlying the Highlands Ranch property owned by Mission Viejo.[1] The order left for future resolution other issues presented by the consolidated cases. We conclude that an appeal cannot be taken from the water court's determination of the additional wells issue absent a direction for entry of judgment and a determination that there is no just reason for delay, under C.R.C.P. 54(b). Accordingly, we dismiss the appeal.

Moses, Wittemyer, Harrison & Woodruff, P.C., Charles N. Woodruff and Veronica A. Sperling, Boulder, for objectors-appellants and plaintiffs-appellants.

Saunders, Snyder, Ross & Dickson, P.C., William J. Kirven, III, David E. Bellack, Denver, and Robert J. Flynn, Englewood, for applicant-appellee and defendant-appellee.

Justice LOHR delivered the opinion of the Court.

In these consolidated cases, the appellants, Mission Viejo Company, Highlands Ranch Development Corporation, and Centennial Water and Sanitation District (collectively, the Highlands Ranch group) appeal from an order of the District Court, Water Division 1 (water court), determining that the appellee, Willows Water District

I.

Willows owns permits issued by the State Engineer for eight wells drawing water from the Arapahoe formation underlying the Highlands Ranch property and has obtained final[2] decrees for three of the wells and partly final, partly conditional decrees for the other five. The Arapahoe formation in this area contains nontributary ground water outside the boundary of any designated ground water basin.[3] Production of water from the Arapahoe formation over time can be expected to lower the water level and diminish hydrostatic pressure, thereby decreasing the capability of the wells to produce water. Additionally, the rate of flow limitations in the permits and decrees preclude production at a rate adequate to meet peak demands of Willows' customers. To address these problems, Willows applied to the State Engineer in 1988 for permits to construct additional

---

1. The brief of the Highlands Ranch group sets forth the following information concerning the interests of the members of the Highlands Ranch group. Highlands Ranch Development Corporation is a wholly owned subsidiary of Mission Viejo. These two corporations own decreed and undecreed rights to ground water underlying Highlands Ranch. Centennial owns wells located on Highlands Ranch and decreed rights to ground water underlying Highlands Ranch. Centennial supplies water to the Highlands Ranch community.

2. The water court used the term "final decree" rather than "absolute decree" to describe decrees for nontributary groundwater wells in order to avoid the implications that "absolute decree" has acquired in tributary water proceed-

ings. We also employ the same terminology for clarity, and sometimes refer to the rights decreed as final rights.

3. The Colorado Ground Water Management Act, §§ 37–90–101 to –142, 15 C.R.S. (1990), provides for the creation of designated ground water basins and for the acquisition and administration of rights to designated ground water, *see* § 37–90–103(6), within such basins, under a modified form of prior appropriation. *See generally State v. Southwestern Colorado Water Conservation Dist.*, 671 P.2d 1294, 1312–13 (Colo.1983); *State ex rel. Danielson v. Vickroy*, 627 P.2d 752 (Colo.1981). Designated ground water includes water not tributary to any stream. § 37–90–103(6); *Vickroy*, 627 P.2d at 756.

wells [4] to supplement the original wells in order to produce the water decreed to those wells. The additional wells would enable Willows to produce water at an increased rate, but total annual production would continue to be limited to the amounts specified in the original permits and decrees.

In response, the Highlands Ranch group initiated a declaratory judgment action in water court, case no. 88CW079, seeking a determination that Willows had no right to construct additional wells without Mission Viejo's consent. In that same action, the Highlands Ranch group requested an injunction to prevent construction of the additional wells. In a separate proceeding, Willows and the State Engineer moved the water court to invoke its retained jurisdiction in the actions in which Willows had obtained decrees for the eight wells, case nos. W–8284–76 and W–9310–78, to determine whether Willows was entitled to additional wells. The water court granted the motion to invoke its retained jurisdiction, and the Highlands Ranch group objected to any determination that Willows was entitled to additional wells. Also pending in the water court were cases 85CW163 and 85CW170 in which Willows sought final decrees for water rights adjudicated conditionally to five of the original eight wells. In June 1989 the water court consolidated all the foregoing cases for trial.

The water court heard the consolidated cases between August 29, 1989, and September 7, 1989. On April 3, 1990, the court issued its memorandum of decision and order for the consolidated cases. The court's findings and conclusions relate almost entirely to the issues of the legal requirements for obtaining a final decree for the conditional water rights and the quantification of such rights in a final decree, issues posed by cases 85CW163 and 85CW170.

The court resolved the matter of the entitlement of Willows to additional wells to enable it to produce decreed quantities of water by the following paragraph:

> After having secured a final decree—or, as formerly, an absolute decree—replacement or additional wells may be permitted where necessary to allow the decree holder to continue to secure the decreed amounts of water. The rights to replacement or additional wells may be limited in this case by the question of whether Willows has access to land to place them on. That issue is not involved in the present case.[5]

The court then ordered Willows to submit a proposed final decree with respect to three of the five wells for which a final decree had not been obtained earlier and directed a further hearing to address an unresolved issue as to the final decree for the other two wells. The Highlands Ranch group sought review of the water court's determination concerning Willows' right to permits for additional wells by taking separate appeals from one of the retained jurisdiction actions, case no. W–8284–76,[6] and the declaratory and injunctive action, case no. 88CW079. The former was assigned case number 90SA217 and the latter case number 90SA218 in this court.

Willows moved to dismiss the appeals for lack of a final judgment. We denied the motion without prejudice to present the issue again in Willows' brief on the merits. Willows elected not to raise the issue again in its brief or in oral argument. We conclude, however, that in the absence of water court determinations of finality and no just reason for delay, as required by C.R.C.P. 54(b), we lack jurisdiction to consider the merits of the water court's order on the additional wells issue.

---

4. We use the term "additional wells" to include both replacement or substitute wells, *see* § 37–90–103(13), 15 C.R.S. (1990), and supplemental wells, *see* § 37–90–103(17).

5. Willows did not seek in the trial court and does not seek on appeal rights of surface access to construct the additional wells. It recognizes that if it prevails in its contention that a right to additional wells is an incident of each of its decreed well rights, it must separately obtain surface access rights by agreement or condemnation before it can construct additional wells.

6. No appeal was filed with respect to the second retained jurisdiction action, case W–9310–78, as to which certain issues remained to be determined. The right to additional wells issue presented by that case is identical to that before us in the cases appealed.

## II.

A summary of the facts, legal standards and resulting legal issues determinative of Willows' right to construct additional wells will provide relevant background for determining whether the water court's resolution of the issues constituted final judgments in the cases appealed. The rights of Willows to withdraw ground water from the Arapahoe formation underlying the Highlands Ranch are based on a complex series of transactions concerning that ranch, located in Douglas County, and owned at one time by Lawrence C. Phipps, Jr. and one of his associated entities. The eight wells are situated on the Highlands Ranch. The basic documents evidencing consent of the Phipps interests for Willows to construct the wells are two letter agreements. The first was between the Phipps interests and Crow Western Corp. pursuant to which Crow Western would construct two wells, now referred to as PA–1 and PA–2,[7] and receive seventy-five percent of the ground water produced therefrom, and the Phipps interests would receive the remaining twenty-five percent. A very similar letter agreement was entered into between the Phipps interests and the Phipps 1527 Company with respect to wells PA–5 to PA–8. By a series of intermediate transfers Willows obtained the interests of the well developers under the letter agreements as well as the retained rights of the Phipps interests. Willows also sought and obtained judicial decrees adjudicating final water rights to three of the eight wells and a combination of final and conditional rights to the other five. One of the intermediate transferors of the Phipps interests was Mission Viejo, which now owns the Highlands Ranch. The question of the right of Willows to construct additional wells arose before Mission Viejo transferred its rights under the letter agreements to Willows, and those transfer instruments specifically reserve as unresolved the issue of whether Willows can obtain permits for

additional wells to produce nontributary ground water authorized under its permits and decrees. A like reservation was included in Willows' water rights decrees for the eight wells by stipulation between Willows and Mission Viejo.

The requirement of landowner consent for drilling wells on lands owned by another is derived from statute. At the time the well permits for the eight wells involved in this case were applied for and granted, the governing statute was 1963 C.R.S. § 148–18–36, adopted by ch. 441, sec. 1, § 148–18–36, 1973 Colo.Sess.Laws 1520, and commonly referred to as Senate Bill 213. As the parties agree, this statute required the consent of the owner of the land on which a well was to be drilled as a condition to issuance of a permit by the State Engineer to construct a well to withdraw nontributary water outside the boundaries of a designated ground water basin. The statute was subsequently amended by legislation commonly referred to as Senate Bill 5, making the consent requirement more explicit, § 37–90–137(4)(b)(II), 15 C.R.S. (1990), providing more specifically for quantification of permitted withdrawals based on the amount of water underlying the land on which a well was to be drilled, and providing for the first time, in section 37–90–137(10), that owners of permits issued pursuant to section 37–90–137(4) "shall be entitled to the issuance of permits for additional wells," to be constructed on the land that supplied the basis for quantification of the ground water to be withdrawn. Ch. 285, sec. 3, § 37–90–137(4)(b)(II), (10), 1985 Colo.Sess.Laws 1160–69, 1163, 1166. These statutes provide the relevant legal standards by which Willows' right to additional wells is to be determined.

The declaratory judgment and injunction action and the retained jurisdiction actions squarely presented the issue of Willows' entitlement to additional wells. The Highlands Ranch group argued that the original

---

7. The Crow Western letter did not mention wells PA–3 and PA–4; the record contains no operative documents evidencing the scope of consent by the Phipps interests with respect to PA–3 and PA–4. An affidavit, however, executed by a general partner in one of the Phipps partnerships, states that the Phipps interests consented to the permit applications for these wells.

letter agreements giving landowner consent to construction of the eight wells must be construed as limiting that consent to eight wells only. Therefore, the Highlands Ranch group contended, Willows obtained no landowner consent for additional wells under the letter agreements and, further, none of the intermediate transfers expanded the scope of the original consents. Willows took the position that the original consents were not limited to construction of eight wells but are sufficient to authorize such additional wells as may be necessary to obtain the quantity of water decreed to the original wells and authorized by the well permits. Alternatively, Willows maintained, the intermediate transfers expanded the scope of the original consents to encompass the construction of the additional wells.

As yet another ground to support its application for permits for additional wells, Willows asserted that the enactment of section 37–90–137(10) by the adoption of Senate Bill 5, providing that owners of permits issued pursuant to section 37–90–137(4) "shall be entitled to the issuance of permits for additional wells," abrogated the requirement of landowner consent. The Highlands Ranch group countered that this is not the proper statutory construction and that, if it were, the statute would be unconstitutional as a deprivation of property without due process of law.

After the trial of the consolidated cases, the water court issued its memorandum of decision and order devoted almost entirely to the complex issues involved in the requirements for granting a final decree and the quantification of the rights to be decreed. Although the water court specifically determined that after obtaining a final decree "replacement or additional wells may be permitted where necessary to allow the decree holder to continue to secure the decreed amounts of water," the court's decision does not contain findings of fact concerning landowner consent or conclusions of law with respect to the need for such consent. Our task is to determine whether the memorandum of decision and order constitutes an appealable judgment on the issue of Willows' right to obtain permits for additional wells.

### III.

#### A.

It is axiomatic that entry of a final judgment is a prerequisite to the right to prosecute an appeal. *Harding Glass Co. v. Jones,* 640 P.2d 1123, 1125 and 1125 n. 2 (Colo.1982); Colo. Const. art. VI, § 2(2); C.A.R. 1(a)(1), (2). An appellate court may not review interlocutory orders without specific authorization by statute or rule. *Vandy's, Inc. v. Nelson,* 130 Colo. 51, 53, 273 P.2d 633, 634 (1954). Absent such authorization, interlocutory orders may be reviewed only after a final judgment. *Id.,* 130 Colo. at 54, 273 P.2d at 634. To constitute a final judgment the trial court's ruling must dispose of the entire litigation on the merits, and leave the court nothing to do but execute the judgment. *Kempter v. Hurd,* 713 P.2d 1274, 1277 (Colo.1986). A final judgment constitutes a complete determination of the rights of the parties involved. *Harding Glass,* 640 P.2d at 1125 n. 2; *D.H. v. People,* 192 Colo. 542, 544, 561 P.2d 5, 6 (1977); *but see Baldwin v. Bright Mortgage Co.,* 757 P.2d 1072, 1074 (Colo.1988) (unresolved attorney fees issue does not impair finality of judgment on merits). When a case involves multiple claims for relief or multiple parties, a judgment resolving fewer than all the claims or the rights of fewer than all of the parties requires certification pursuant to C.R.C.P. 54(b) in order to support an appeal. *Kempter,* 713 P.2d at 1278. To certify a judgment as final under C.R.C.P. 54(b), the trial court must properly and expressly determine that there is no just reason for delay and must expressly direct entry of judgment. C.R.C.P. 54(b); *see, e.g., Harding Glass,* 640 P.2d at 1125. Since this final judgment requirement is jurisdictional, a court, at its own instance, must dismiss an appeal in the absence of a final judgment. *Harding Glass,* 640 P.2d at 1126. *See also Sullivan v. Board of County Commissioners,* 692 P.2d 1106, 1108 (Colo.1984) (appellate court may notice questions of jurisdiction on its own motion).

## B.

■ The present case consolidates several independent actions.[8] The actions involve wells located on the same property, and the additional wells issue was common to some of them. Under C.R.C.P. 42(a), the trial court, in its discretion, may consolidate separate actions into a single case when they present common questions of law or fact. Consolidation does not merge the consolidated actions into a single action. *National Farmers Union Property & Casualty Co. v. Frackelton*, 662 P.2d 1056, 1061 (Colo.1983) (party in one action not a party in other action despite discretionary consolidation order).

The water court's memorandum of decision and order did not resolve the entire consolidated case. First, the water court ordered Willows to submit a proposed final decree for wells PA–6, PA–7 and PA–8. Second, it ordered an additional hearing for the purpose of quantifying the rights to be decreed finally with respect to wells PA–4 and PA–5. The only issue involving wells PA–1 to PA–3, however, was Willows' entitlement to additional wells. The court made no provision for submission of a further order or decree for those latter three wells because all water rights had previously been finally decreed. Since the water court did not order further proceedings on the additional wells issue, this left nothing to be resolved concerning the only issue before the water court in the two actions that are the subject of separate appeals in case numbers 90SA217 (concerning retained jurisdiction action W–8284–76) and 90SA218 (concerning declaratory and injunctive action 88CW079), now before us.[9] We conclude that the water court's memorandum of decision and order conclusively determined that issue applicable to all eight wells. The memorandum of decision and order therefore resolved the only issue presented in two of the actions, but left other issues unresolved in the other actions

within the consolidated case. The water court, however, did not certify the actions presenting only the additional wells issue under C.R.C.P. 54(b).

## C.

■ The final judgment requirement becomes particularly problematic in consolidated cases. Courts have diverged over the appealability of a judicial determination of all issues presented by one or more of the consolidated actions while leaving some or all of the issues presented by the other actions unresolved. Several federal circuits adopt the position that if the actions are consolidated only for trial, a judgment entered on fewer than all the consolidated actions is appealable without a certification under F.R.C.P. 54(b) (essentially identical to C.R.C.P. 54(b)). *E.g., Kraft, Inc. v. Local Union 327, Teamsters, Chauffeurs, Helpers and Taxicab Drivers*, 683 F.2d 131 (6th Cir.1982); *In Re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439 (1st Cir.1972). Others take the contrary position, holding that the interest of certainty requires Rule 54(b) certification before a judgment in a consolidated action that does not dispose of all claims will be considered final. *E.g., Trinity Broadcasting Corp. v. Eller*, 827 F.2d 673 (10th Cir.1987); *Huene v. United States*, 743 F.2d 703 (9th Cir. 1984); *Currington v. Johnson*, 685 P.2d 73 (Alaska 1984); *State ex. rel. Pacific Intermountain Express, Inc. v. District Court*, 387 P.2d 550 (Wyo.1963). A third group of courts considers the appealability of consolidated actions on a case-by-case basis, examining factors such as the nature of the consolidation order, the similarity of issues, and the identity of parties. *Bergman v. City of Atlantic City*, 860 F.2d 560 (3d Cir.1988); *Ivanov-McPhee v. Washington National Insurance Co.*, 719 F.2d 927 (7th Cir.1983). *See generally* 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2386 at 276 (1971 & 1990 Supp.); 5 J.

---

8. For clarity, we refer to the consolidated proceeding as a "case," and the lawsuits consolidated for trial within it as "actions."

9. Although retained jurisdiction action W–8284–76 relates to wells PA–1 to PA–4, the unresolved quantification issue concerning well PA–4 is not presented by that action, but by one of the actions not appealed.

Moore, *Moore's Federal Practice* ¶ 42.02[6] (1990 Supp.).

In *Hageman v. City Investing Co.*, 851 F.2d 69, 71 (2d Cir.1988), the Second Circuit Court of Appeals considered the merits of both the mandatory certification approach and the case-by-case approach, and adopted a strong presumption of nonappealability when Rule 54(b) certification is lacking. There are significant benefits offered by the mandatory approach. First, the requirement of Rule 54(b) certification provides a uniform rule that informs litigants with certainty that the judgment has become final. *Hageman*, 851 F.2d at 71. This allows the litigants to know when their time for appeal has begun to run.[10] *See Huene v. United States*, 743 F.2d at 704. Second, interim appellate review prior to the resolution of the entire consolidated case could frustrate the purpose underlying the original consolidation. *Id.* The trial court consolidates the actions because of common questions of law or fact. An interim partial appeal fragments these shared issues. The Rule 54(b) certification requires the trial court to assess the original purpose of consolidation and determine whether an interim appeal would frustrate that purpose. *Id.* at 705. The trial court, rather than the appellate court, should perform that analysis. Third, a requirement of Rule 54(b) certification also avoids piecemeal and possibly duplicative appellate review. Moreover, certification rests in the trial court's discretion and is available when truly appropriate. On the other hand, the case-by-case approach affords the appellate court some flexibility to accommodate unusual circumstances. The Second Circuit Court of Appeals garnered the benefits of both approaches by adopting a strong presumption that a judgment is not appealable absent Rule 54(b) certification. *Hageman*, 851 F.2d at 71. In most situations, Rule 54(b) certification will be necessary, thereby affording litigants the certainty provided by a uniform rule. In highly unusual circumstances, however, a litigant may overcome this presumption to obtain immediate appellate review. *See Hageman*, 851 F.2d at 71. We find these considerations persuasive and therefore adopt this strong presumption of nonappealability absent C.R.C.P. 54(b) certification.

### D.

We are satisfied that the strong presumption of nonappealability that we adopt today is consistent with the holding of *Judd Construction Co. v. Evans Joint Venture*, 642 P.2d 922 (Colo.1982). In that case, a subcontractor sued both the general contractor and the property owner to obtain payment for work performed on a construction project. The owner asserted cross-claims against the general contractor and counterclaims against the subcontractor. An arbitration agreement governed certain other issues between the owner and the general contractor that arose out of the same transaction. After an arbitrator resolved those latter issues, the general contractor commenced a proceeding to confirm the arbitration award. The trial court consolidated the confirmation proceeding with the litigation initiated by the subcontractor, and then confirmed and entered judgment on the arbitration award. This left the owner's cross-claims and counterclaims remaining to be determined. The court of appeals reversed, holding that the trial court could not enter final judgment on the arbitration award until resolution of the entire consolidated case. *Judd Constr. Co. v. Evans Joint Venture*, 44 Colo.App. 406, 619 P.2d 775 (1980), *rev'd*, 642 P.2d 922 (Colo.1982).

On certiorari review, we reversed and held that a final, appealable judgment confirming an arbitration award may be entered even though other claims within the consolidated case are still unresolved. First, the summary procedure to confirm arbitration awards, established by the Uniform Arbitration Act of 1975, §§ 13–22–201 to –223, 6A C.R.S. (1973 & 1981 Supp.), supersedes C.R.C.P. 54(b). Second, the Arbitration Act requires that courts treat ar-

---

**10.** Moreover, this approach ensures that litigants do not lose their opportunity to appeal because of a mistaken belief that the judgment was not final.

bitration awards as judgments. The trial court does not resolve the substantive questions of fact or law presented in the arbitration proceeding; the Arbitration Act confines judicial review of an arbitration award to its procedural validity under the Arbitration Act. The court must confirm a procedurally valid arbitration award. These features distinguished the confirmation proceeding from the other claims. Since the trial court did not resolve any questions of fact or law in the confirmation proceeding, we stated that consolidation under C.R.C.P. 42(a) was questionable but noted that the parties had not challenged the consolidation. In light of the dubious validity of the consolidation order and the separate and distinct nature of the confirmation proceedings, we held that the confirmation proceeding retained its separate identity. The trial court could therefore enter final judgment on that award without regard to the requirements of C.R.C.P. 54(b). *Id.* at 926.

The *Judd* decision can be reconciled with the presumption of nonappealability that we adopt with respect to judgments resolving fewer than all of the consolidated cases. The confirmation proceeding would constitute unusual circumstances overcoming the presumption of nonappealability. The confirmation proceeding was distinct from the other claims and the merits of the underlying claim were resolved by a different tribunal. The trial court had an extremely limited role in the confirmation proceeding. Furthermore, the consolidation order was probably an abuse of the trial court's discretion. Although *Judd* did not employ the presumption of nonappealability that we adopt in this case, our holding in that case is consistent with the analysis that has led us to adopt a presumption of nonappealability.[11]

### E.

The present case illustrates the difficulties that can attend the determination of the issue of finality in consolidated cases. The water court's memorandum of decision and order does not clearly indicate that some of the consolidated actions were fully adjudicated. The indeterminate finality of the water court's order creates uncertainty as to when the water court's determinations must be appealed. A certification or denial of certification under C.R.C.P. 54(b) would dispel these uncertainties. Rule 54(b) certification also would require the water court to consider whether its factual findings and legal conclusions were sufficient.[12] In addition, one of the factors underlying the consolidation order

11. Nor do we view the court of appeals' decision in *Denver v. Board of Assessment Appeals,* 748 P.2d 1306 (Colo.App.1987), as arriving at a result inconsistent with the presumption of nonappealability of separate actions in a consolidated case. That case involved the time period for filing appeals in a consolidated case where the actions consolidated were governed by statutes prescribing different time limits for initiating appeals. Since the consolidated actions retained their separate identities, the court of appeals held that each action was governed by its own prescribed time limit. We note that the time limits for filing notices of appeal has little bearing on the underlying purposes of consolidation whereas the common issues of law and fact that prompt consolidation implicate the final judgment rule.

12. Even if we could conclude that we have jurisdiction to consider these appeals, it would be necessary to dismiss the appeals for lack of compliance with C.R.C.P. 52. That rule requires that "[i]n all actions tried upon the facts without a jury ... the court shall find the facts specifically and separately state its conclusions of law

thereon. ..." We have held that "it is an elementary axiom of procedural due process that where significant rights are at issue, the decisionmaker must state the reasons for his determination." *Mau v. E.P.H. Corporation,* 638 P.2d 777, 780 (Colo.1981) (citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), among other cases). The court's findings must be sufficiently explicit to give an appellate court a clear understanding of the basis of its decision. *E.g., Mau,* 638 P.2d at 780; *Mowry v. Jackson,* 140 Colo. 197, 343 P.2d 833 (1959); *Twin Lakes Reservoir & Canal Co. v. Bond,* 156 Colo. 433, 399 P.2d 793 (1965). In the absence of sufficient findings of fact and conclusions of law to permit appellate review, the proper remedy is a remand to the trial court with directions to make the requisite findings. *Mowry.* As previously noted, the water court did not make factual findings on the question of landowner consent or issue legal conclusions on the necessity for such consent. In the absence of findings and conclusions enabling us to understand the basis of the water court's decision, remand for additional findings and conclusions would be necessary in any event.

was that the additional wells issue was common to several actions, including the yet uncompleted actions.[13] This common issue makes consolidated appellate review especially suitable. Interim appellate review creates the possibility of duplicative appellate review of this issue. Moreover, we see no urgent reason for immediate, separate appellate review. The presumption of nonappealability has not been overcome. Under these facts, we are persuaded that the judgments appealed from cannot be considered final in absence of a Rule 54(b) certification. We therefore dismiss the appeals for lack of appellate jurisdiction.

Appeals dismissed.