**The CITY OF GRAND JUNCTION, Objector–Appellant,**

v.

**The CITY AND COUNTY OF DENVER, acting by and through its board of water commissioners, Applicant-Appellee.**

and

**Orlyn G. Bell, Division Engineer, Water Division 5, Appellee pursuant to C.A.R. 1(e).**

No. 97SA93.

Supreme Court of Colorado, En Banc.

June 15, 1998.

Rehearing Denied July 15, 1998.

As Corrected Sept. 18, 1998.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jody Harper Alderman, Denver, Daniel E. Wilson, City Attorney, City of Grand Junction, Grand Junction, for Objector–Appellant.

Patricia L. Wells, Michael L. Walker, Casey S. Funk, Amy M. Cavanaugh, Denver, for Applicant–Appellee.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Deputy Attorney General, Joseph C. Smith, Jr., Deputy Attorney General, Wendy C. Weiss, First Assistant Attorney General, Natural Re-

sources Section, Denver, for State and Division Engineers.

Justice MARTINEZ delivered the Opinion of the Court.

The City of Grand Junction appeals a judgment and decree of the District Court, Water Division 5 (the "Water Court"), granting the City and County of Denver's application for refill rights with respect to Dillon Reservoir. Grand Junction contends that the Water Court lacked subject matter jurisdiction to adjudicate Denver's application because the application concerns matters over which the United States District Court for the District of Colorado (the "Federal Court") retains exclusive jurisdiction. We hold that the Water Court possessed at least concurrent jurisdiction over the subject matter of Denver's application. Accordingly, we affirm the Water Court's judgment and decree.

## I.

This controversy centers around water rights to the Blue River, a tributary of the Colorado River, located on the western slope of the Continental Divide. In 1963, Denver began storing water in Dillon Reservoir as part of the Blue River Diversion Project. This project is a water storage and diversion project at the confluence of the Blue, Ten Mile and Snake Rivers in Summit County. Water diverted at Dillon Reservoir is transported eastward under the Continental Divide through the Roberts Tunnel. Denver stores water at Dillon Reservoir under a June 24, 1946 priority for municipal use in the Denver metropolitan area. Denver's storage right was adjudicated in 1955 as part of the Blue River Decree. As will be discussed more thoroughly in Part III of this opinion,[1] the Federal Court issued the Blue River Decree to resolve a complex water dispute involving substantial litigation and multiple parties and claims.

Dillon Reservoir achieved its first fill in 1965. From that point until 1985, Denver

was allowed to maintain the reservoir at a specified "gauge height," or constant elevation, without regard to losses from evaporation or seepage. For practical purposes, this amounted to a refill of the reservoir. Denver exercised this refill whenever reservoir capacity and water supply were available. Between 1985 and 1987, the Division Engineer determined that accounting should be done for evaporation losses. He also determined that Denver should be charged against its first fill, under the 1946 priority, for water passing through the reservoir but not held. Pursuant to its historic use of Dillon Reservoir for flood control, Denver bypasses through the reservoir a certain amount of water that is capable of being stored under the reservoir's 1946 priority. Under the Division Engineer's determination, this bypassed water would count against the 1946 priority. Thus, Dillon Reservoir could achieve a "paper fill" without being physically full.

In order to protect its historic use of the reservoir, Denver filed an application in the Water Court in 1987 to confirm a priority to refill Dillon Reservoir after the reservoir's first fill and if space is available in the reservoir.[2] Denver's claim includes the right to deplete streamflows by storage of water in order to replenish evaporation and seepage losses. Although Denver initially claimed a 1965 appropriation date for this refill right, Denver ultimately stipulated to an appropriation date of January 1, 1985.

Denver's application claims a maximum of 175,000 acre feet ("A.F.") in any single administrative year, including 13,524 A.F. absolute and 161,476 A.F. conditional. The application prompted numerous statements of opposition. Several objectors ultimately withdrew their statements and stipulated to the entry of a decree with conditions. Grand Junction, which has rights to Colorado River water under a 1947 priority, was the only objector that participated actively at trial.

---

1. *See* discussion and definitions *infra* p. 679–681.

2. Denver's application may have also been occasioned by the Colorado Water Conservation Board's application for an "instream flow" right

along the Colorado River at Grand Junction. Denver seeks a priority date for its refill right that is senior to the pending "instream flow" application.

At trial, Grand Junction asserted, inter alia, that Denver's application concerned matters which were the subject of the Blue River Decree. In the Blue River Decree, the Federal Court retained "continuing jurisdiction for the purpose of effectuating the objectives" of the decree. Grand Junction contended that, pursuant to this decree, the Federal Court retains exclusive jurisdiction over Denver's application for a refill right, and therefore, the Water Court should not have adjudicated Denver's claim. Grand Junction also maintained that Denver's claimed refill right conflicts with the terms of the Blue River Decree itself because the Blue River Decree restricts Dillon Reservoir to only one fill each year.

The Water Court rejected all of Grand Junction's arguments. The court held that the Blue River Decree "did not enjoin Denver from seeking a new appropriation under a different priority date at some later date. It resolved the water claims before it at the time." Further, the Water Court found that the Blue River Decree did not limit Dillon Reservoir to one fill per year. Thus, the Water Court concluded that it had "at least concurrent jurisdiction with the Federal District Court over the subject-matter of this action." The Water Court subsequently granted Denver's application for a refill right with a 1987 priority date in the amount discussed above.

Pursuant to section 13–4–102(1)(d), 5 C.R.S. (1997), and C.A.R. 1, Grand Junction appeals the Water Court's judgment.[3] Once again, Grand Junction asserts that the Water Court lacked subject matter jurisdiction over Denver's claim. We affirm the judgment of the Water Court.

## II.

We first address Grand Junction's assertion that we lack appellate jurisdiction over this matter because the Water Court did not issue a final judgment. Grand Junction's claim stems from the fact that the Water

Court, in addition to finding that Denver's refill right did not conflict with the provisions of the Blue River Decree, supplied a signature line at the end of its decree for the Federal Court. The Federal Court's signature would reflect its agreement that the Water Court's decree does not adversely affect the objectives of the Blue River Decree.

The Water Court supplied this signature line as a result of a stipulated agreement among Denver and the objectors (save Grand Junction) which required the Water Court's decree to be submitted to the Federal Court for this verification. Grand Junction contends that the provision of this signature line renders the Water Court's decree merely interlocutory because "it leaves something further to be done before the rights of the parties are determined." Thus, Grand Junction maintains that, pursuant to C.A.R. 1, we lack appellate jurisdiction.

■ As a general matter, an appeal may be taken only from a final judgment of a district, probate or juvenile court. See C.A.R. 1(a)(1). An appellate court does not review interlocutory orders absent specific authorization by statute or rule. See Mission Viejo Co. v. Willows Water Dist., 818 P.2d 254, 258 (Colo.1991). The final judgment requirement is reflected in C.A.R. 1(a)(1) and applies generally, "save in the exceptional circumstances mentioned in (a)(2), (3), and (4)." Vandy's, Inc. v. Nelson, 130 Colo. 51, 53, 273 P.2d 633, 634 (1954); see also Mission Viejo, 818 P.2d at 258; Colorado Anti–Discrimination Comm'n v. Continental Air Lines, Inc., 143 Colo. 590, 593, 355 P.2d 83, 85 (1960).

■ C.A.R. 1(a)(2) provides that an appeal to an appellate court may be taken from, inter alia, "[a] judgment or decree, or any portion thereof, in a proceeding concerning water rights." The appeal from the Water Court in this case, therefore, qualifies under C.A.R. 1(a)(2) as an "exceptional circumstance" to which the requirements of C.A.R. 1(a)(1) do not apply. Hence, our jurisdiction

---

**3.** Grand Junction, the appellant in this proceeding, also asserts that this court may lack appellate jurisdiction to consider this appeal because the Water Court's decree did not constitute a "final judgment." Grand Junction asserts that, if

we find appellate jurisdiction lacking, we should treat this matter as an original proceeding under C.A.R. 21 in order to vacate the Water Court's judgment.

over this case does not depend upon whether the Water Court's judgment constitutes a "final judgment" within the meaning of C.A.R. 1(a)(1).

With regard to water matters, we have declined to exercise appellate jurisdiction where a water court's decree did not determine all claims presented. *See Mission Viejo,* 818 P.2d at 258; *Northern Colo. Irrigation Co. v. City & County of Denver,* 86 Colo. 54, 57–58, 278 P. 592, 593 (1929). Thus, "when a case involves multiple claims for relief or multiple parties, a judgment resolving fewer than all the claims or the rights of fewer than all the parties" cannot be the subject of appellate review absent special certification by the trial court. *Mission Viejo,* 818 P.2d at 258 (requiring certification of trial court's order pursuant to C.R.C.P. 54(b)).

 Accordingly, we lack appellate jurisdiction over this matter if the Water Court's judgment failed to resolve all the claims before it. Grand Junction, however, does not assert that the Water Court's judgment leaves any claims unresolved, nor does the record support such an assertion. The only claim at issue in the proceeding below was Denver's application for the Dillon Reservoir refill right, and the only objector in the proceeding was Grand Junction. The Water Court granted Denver's claim after rejecting Grand Junction's objections.

We also reject Grand Junction's contention that the Water Court's provision of a signature line for the Federal Court, per the parties' stipulation, had an effect upon the validity of the Water Court's decree. The mere presence of this signature line did not transfer ultimate authority over this water matter to the Federal Court. The parties' stipulation to obtain supplemental approval of Denver's application from the Federal Court could not, and did not, affect the Water Court's authority to enter a decree in this case. Accordingly, the Water Court's decree constitutes a "full, final, and complete determination of all claims presented." *Northern Colo. Irrigation Co.,* 86 Colo. at 58, 278 P. at 593. Therefore, appellate review by this court is proper.

## III.

Grand Junction contends that Denver's claim for a refill right is not only within the subject matter of the Blue River Decree, but also conflicts with the terms of that decree. In order to address these contentions, we must first discuss the history and relevant provisions of the Blue River Decree.

The Blue River Decree is the result of a dispute dating to 1937. In that year, Congress authorized a reclamation project known as the Colorado–Big Thompson Project ("CBT"). *See City & County of Denver v. United States,* 935 F.2d 1143, 1146 (10th Cir.1991). The CBT provided for the construction of the Green Mountain Reservoir and Power Plant on the Blue River. One of the purposes of the CBT, as set forth in Senate Document No. 80, 75th Cong., 1st Sess. (1937), was to store replacement water at Green Mountain Reservoir for use by western slope interests to compensate for other Colorado River water diverted to the eastern slope as part of the CBT. Green Mountain Reservoir was completed in 1942.

After completion of the reservoir, several appropriators of Blue River water, including Denver, commenced adjudication proceedings in the District Court of Summit County. These proceedings were designed to determine relative priorities for purposes of irrigation (State Action No. 1805) and for purposes other than irrigation (State Action No. 1806). The United States joined those proceedings by filing "Statements of Claim" to Blue River water at Green Mountain Reservoir. However, the United States later withdrew from the proceedings, and in 1949 instituted a parallel adjudication in the Federal Court (Federal Action No. 2782) to quiet title to water rights in the Blue River against Denver and others. Denver and the other parties maintained claims to divert Blue River water upstream from Green Mountain Reservoir in order to augment municipal water supplies.

In 1954, the state adjudication reached this court in *City & County of Denver v. Northern Colorado Water Conservancy District,* 130 Colo. 375, 276 P.2d 992 (1954). We affirmed the water decrees insofar as they

determined the relative rights of Denver and the other parties to Blue River water. However, because the proceeding had not adjudicated the United States' storage and direct flow water rights with respect to Green Mountain Reservoir, we remanded the case with instructions to adjudicate these rights. *See id.* at 422, 276 P.2d at 1015. By this time, Congress had enacted the McCarran Amendment, Pub.L. No. 82–495, § 208(a)-(c), 66 Stat. 549, 560 (1952), codified at 43 U.S.C. § 666 (1994), in which Congress gave consent to join the United States as a party in a state water adjudication. On remand, the United States was joined as party to the Blue River water proceedings in state court. The United States then removed the entire case to the Federal Court where State Actions 1805 and 1806 were renamed Federal Actions 5016 and 5017. These actions were then consolidated with Federal Action 2782, the United States' earlier action. The entire proceeding became known as the "Consolidated Cases."

By a stipulation dated October 5, 1955, the parties substantially settled the Consolidated Cases. On October 12, 1955, the Federal Court entered a final decree and judgment (the "Blue River Decree") which incorporated the stipulation executed by the parties.[4] The Blue River Decree recognized the United States' right to fill and utilize the Green Mountain Reservoir with a priority date of 1935. The Blue River Decree also incorporated by reference the state decrees entered in State Actions 1805 and 1806 insofar as they described Denver's rights to the use of Blue River water and its tributaries. The state decrees contained the following provision regarding Denver's right to divert water upstream from Green Mountain Reservoir at Dillon Reservoir:

Dillon Reservoir, as hereinbefore described, be, and it hereby is ... awarded a conditional priority, the same being Reservoir Priority No. 8(C), as of the date of *June 24, 1946,* for an amount of water not exceeding 252,678 acre feet ... of water out of the Blue River, Snake River or Ten Mile River, or any combination of them, upon the limitations and conditions herein

provided, and there is hereby allowed to flow into Dillon Reservoir from said streams, under said Reservoir Priority No. 8(C) for the uses aforesaid and for the benefit of the parties entitled thereto, at any time when it does not interfere with prior appropriations of water from said streams, sufficient water to keep said reservoir reasonably well filled, and provided further, that as against junior appropriators, who need and can use the water capable of being impounded in said reservoir, only one filling shall be allowed each year.

(Emphasis added.) The stipulation incorporated by the Blue River Decree modified these state decrees slightly by limiting Denver's rights solely to municipal purposes.

Thus, Denver's water rights on the Blue River were subject to the senior rights of the United States. According to the decree, Denver could divert Blue River water only if the Secretary of the Interior determined that the diversion would "not adversely affect the ability of Green Mountain Reservoir to fulfill its function as set forth in [Senate Document No. 80]...." Denver also agreed to bypass quantities of water sufficient to meet all downstream calls, with priorities superior to Denver's, on the Blue River and the downstream segment of the Colorado River.

At the conclusion of the Blue River Decree, the Federal Court declared:

[T]he titles to the rights to the use of water of the respective parties, the United States of America, the City and County of Denver, the City of Colorado Springs and the City of Englewood, be and the same are hereby quieted, and the respective parties and their successors or assigns are forever enjoined and restrained from asserting or claiming as against each other any different priorities than those specified in this Final Decree.

The Federal Court expressly retained continuing jurisdiction for the purpose of effectuating the objectives of the Blue River Decree.

---

4. The Blue River Decree also incorporated by reference Senate Document No. 80 and repeated the language of that document describing the

manner in which the CBT facilities were to be operated.

After Denver began storing water in Dillon Reservoir in 1963, additional disputes arose. In decrees entered in 1964 and 1977, the Federal Court reaffirmed the following: (1) the United States' right to fill Green Mountain Reservoir each year was superior to Denver's right to fill Dillon Reservoir, (2) Denver's right to divert water from the Blue River or to make certain replacements or exchanges of Blue River water is subject to the approval of the Secretary of the Interior, and (3) Denver may not divert Blue River water until Green Mountain Reservoir is either filled or assured of filling each year. *See Denver v. United States*, 935 F.2d at 1146–47; *United States v. Northern Colo. Water Conservancy Dist.*, 608 F.2d 422, 427 (10th Cir.1979).

It is within this context that Grand Junction asserts that the Water Court lacked subject matter jurisdiction over Denver's application for a Dillon Reservoir refill right with a 1987 priority date. For the reasons set forth below, we find Grand Junction's arguments unpersuasive.

## IV.

### A.

■■■ Subject matter jurisdiction relates to a court's authority to deal with the class of cases in which it renders judgment. *See Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 38 (Colo.1997); *Monaghan Farms v. City & County of Denver*, 807 P.2d 9, 18 (Colo.1991). An application for the determination of a water right or a conditional water right involves a "water matter" over which a water court has special statutory jurisdiction. *See* § 37–92–203(1), 10 C.R.S. (1997); § 37–92–302(1)(a), 10 C.R.S. (1997); *Bubb v. Christensen*, 200 Colo. 21, 25, 610 P.2d 1343, 1346 (1980). When a case involves a "water matter" assigned by statute to a water court, the court has jurisdiction over persons and property affected by the application. *See Dallas Creek Water Co.*, 933 P.2d at 38.

Additionally, we have held that subject matter jurisdiction vests in the water court upon the timely filing of the application and publication of the résumé notice. *See id.* at 32; *see also Bubb*, 200 Colo. at 25, 610 P.2d

at 1346 (affirming water right that was obtained in full compliance with procedures prescribed by section 37–92–302). In this case, the Water Court found that "[a]ll notices required by law of the filing of this Application have been fulfilled and the Court has jurisdiction of this Application." Grand Junction does not contend that Denver failed to comply with any statutory procedures relating to application for adjudication of a water right.

Accordingly, the Water Court possessed subject matter jurisdiction over Denver's application, absent special circumstances divesting the court of jurisdiction. *See generally United States v. City & County of Denver*, 656 P.2d 1, 8 (Colo.1982) (noting Congress's acquiescence "in comprehensive state control over the appropriation of water"). In order to show that the Water Court lacked jurisdiction, Grand Junction must demonstrate that such a special circumstance existed in this case.

### B.

Grand Junction first asserts that the Water Court lacked jurisdiction over Denver's application because long-standing principles of water law prohibit a court from interpreting or enforcing a decree entered by another court. *See Hazard v. Joseph W. Bowles Reservoir Co.*, 87 Colo. 364, 367, 287 P. 854, 855 (1930); *Weiland v. Reorganized Catlin Consol. Canal Co.*, 61 Colo. 125, 128, 156 P. 596, 597 (1916). Because the Water Court necessarily interpreted the Blue River Decree in entering the decree in this case, Grand Junction claims that the Water Court exceeded its jurisdiction.

In *Weiland*, we explained:

The statutes designate the District Court vested with exclusive jurisdiction to adjudicate priorities to the use of water for irrigation in a water district. When jurisdiction for that purpose has attached and a decree is entered, the statutes on that subject necessarily *inhibit any other court of coordinate jurisdiction from modifying, reviewing, or construing such decree;* otherwise there could be, in effect, more than one decree, by different courts, *affecting*

*the same priority to the use of water* in the same water district, which it is the object of the statutes to avoid.

61 Colo. at 130–31, 156 P. at 598 (emphasis added); *see also Hazard,* 87 Colo. at 367, 287 P. at 855 (same). Both *Weiland* and *Hazard* involved the adjudication of the same rights by two different courts within the same water district. Given that "there is to be but one decree by one court in a given district," *Weiland,* 61 Colo. at 130, 156 P. at 598, we were concerned about possible conflicts in different decrees entered by different courts within the district. These concerns were realized in *Hazard,* where the second court did not merely maintain the priorities described in the first decree, but radically changed the provisions of the first decree and, in fact, entered a new and different decree. *See* 87 Colo. at 366, 287 P. at 854.

In *Faden v. Hubbell,* 93 Colo. 358, 28 P.2d 247 (1933), we revisited this issue. In that case, defendants objected to the jurisdiction of the Adams County District Court where the District Court of the City and County of Denver had already acquired jurisdiction to adjudicate rights in the water district. *See id.* at 364, 28 P.2d at 249. We rejected defendants' claims, however, finding that "there is no conflict of jurisdiction when the objects sought by the two courts were separate and distinct, indeed, when the present suit for an injunction was to attain an objective which could not have been accomplished in the [previous] adjudication." *Id.*

In *Faden,* the second court's judgment did not modify or impair previous decrees, but left them undisturbed. Therefore, we held that the assumption of jurisdiction by the first court did not preclude the second court from assuming jurisdiction over matters not adjudicated in the previous decrees and arising subsequent thereto. *See id.* at 365, 28 P.2d at 249. We also addressed the language of *Weiland* and *Hazard,* quoted above, that ostensibly prohibited a court from construing or reviewing the provisions of another court's decree, and we offered the following clarification:

> Of course, it is necessary for any court, in considering a plea of a former adjudication ... to read and interpret such former

decree, to the extent, at least, of determining what it is about or the identity of the subject-matter, and what the holding was, in order to ascertain its relation to the case in hand ... The statutory decree in water district No. 2 did not give the district court of Denver a monopoly forever after to determine every other conceivable question that might later arise pertaining to the infringement of water rights in that water district, as to matters not interfering with the former decree. If no other court were permitted to examine or construe it at all for any purpose, it would seriously abridge its usefulness ... [because] one court could not tell what the other had done.

*Faden,* 93 Colo. at 366–67, 28 P.2d at 250.

Moreover, in *City & County of Denver v. Consolidated Ditches Co.,* 807 P.2d 23 (Colo. 1991), we undertook an examination of the Blue River Decree itself. There, Denver argued that a 1940 agreement between the city and other appropriators of transmountain water was unenforceable as against the public policy of maximum beneficial use of water. *See id.* at 34–35. As support for this argument, Denver pointed to the Blue River Decree. The decree provided that Denver, "within all legal limitations and subject to economic feasibility," would exercise due care and diligence in accomplishing the objective of municipal reuse and successive use of Blue River water to reduce demands upon the Blue River. Because the 1940 agreement predated the Blue River Decree, we construed the "legal limitations" provision of the Blue River Decree as acknowledging the limitations imposed by the 1940 agreement. *See id.* Consequently, after examining and determining the import of the Blue River Decree, we rejected Denver's reliance upon it.

In light of *Faden* and *Denver v. Consolidated Ditches,* we disagree with Grand Junction's claim that the Water Court exceeded its jurisdiction when it examined and construed the provisions of the Blue River Decree. We hold that the Water Court possessed the authority to review the Blue River Decree in order to ascertain whether Denver's application would interfere with the terms or objectives of the decree. In doing so, we also reaffirm the principle, described

in *Weiland* and *Hazard*, that a court of coordinate jurisdiction does not possess the authority to enter a decree that modifies or interferes with the objectives or terms of another court's decree.

Consequently, the relevant question becomes: does the Water Court's decree effectively modify or conflict with the Blue River Decree? If so, the Water Court exceeded its jurisdiction. If, on the other hand, the effect of the Water Court's decree "is not to modify or impair existing decrees, either by enlarging or diminishing them; [and] it leaves them just as they were without interference," *Faden*, 93 Colo. at 365, 28 P.2d at 249, the Water Court acted within its jurisdiction. As explained below, we find that the Water Court acted properly.

### C.

 Grand Junction contends the Water Court's decree, by granting Denver's application for a new refill right for Dillon Reservoir, directly conflicts with the Blue River decree. In support of this argument, Grand Junction points to two provisions of the Blue River Decree: (1) the section that limits Dillon Reservoir to one fill per year "as against junior appropriators," and (2) the language declaring that "the respective parties and their successors or assigns are forever enjoined and restrained from asserting or claiming as against each other any different priorities than those specified in this Final Decree." [5] We address each provision in turn.

Firstly, the Blue River Decree prescribes a hierarchy of priorities among the various parties to the decree. Denver's right to divert Blue River water at Dillon Reservoir is senior to some priorities and junior to others. The plain language of the decree limits Dillon Reservoir to one fill *in priority* per year. The decree states, "[T]here is hereby allowed to flow into Dillon Reservoir from said streams, *under said Reservoir Priority No. 8(C)* for the uses aforesaid and for the benefit of the parties entitled thereto ... sufficient water to keep said reservoir reasonably well filled, and provided further, that as against junior appropriators, ... only one filling shall be allowed each year." (Emphasis added.)

Therefore, in the context of the priorities described in the decree, Denver can fill Dillon Reservoir only once.[6] In other words, all priorities to Blue River water awarded in the Blue River Decree are senior to Denver's rights, if any, to fill Dillon Reservoir more than once. In the instant case, Denver ultimately sought a refill right with a priority date of 1987, a date junior to all priorities described in the Blue River Decree.[7] Hence, Denver's new claim is entirely consistent with those terms of the Blue River Decree that relate specifically to refilling Dillon Reservoir.

The essence of Grand Junction's second claim is that the Blue River Decree forever prohibits Denver from asserting a new and distinct claim to Blue River water, even where the claimed priority is junior to all those adjudicated in the Blue River Decree. We reject this broad interpretation of the decree and of the Federal Court's retained jurisdiction. In order to explain the proper scope of the Blue River Decree, it is necessary to address again two instances in which the Federal Court exercised its continuing jurisdiction to enforce the decree.

---

**5.** Grand Junction also relies on the provisions of the Blue River Decree that require Denver to exercise due diligence in taking, "with respect to return flow of water," all reasonable steps to accomplish a "reduction by such city of its Blue River water use," and to utilize return flow "so to reduce or minimize the demand of such city upon Blue River water." Because Grand Junction presents no argument or evidence that Denver's application for a refill right involves use of or failure to use "return flow" of Blue River water, we find no conflict between Denver's application and these provisions of the decree.

**6.** This provision is consistent with other "one fill." limitations on reservoirs found in our case law. *See Orchard City Irrigation Dist. v. Whitten*, 146 Colo. 127, 141, 361 P.2d 130, 137 (1961) ("[T]he statute which provides for these decrees forbids the allowance of more than one filling on one priority in any one year."); *Windsor Reservoir & Canal Co. v. Lake Supply Ditch Co.*, 44 Colo. 214, 223–24, 98 P. 729, 733 (1908) (same).

**7.** Denver's claimed refill right is also junior to Grand Junction's 1947 priority to appropriate Colorado River water.

In 1964, the Federal Court assumed jurisdiction over a dispute between Denver and the United States over whether Denver could rely on the provisions of the Blue River Decree to make replacement releases from its William Forks Reservoir in order to satisfy the senior, downstream calls that were being filled by Blue River water that Denver desired to use to fill Dillon Reservoir. *See Denver v. United States*, 935 F.2d at 1146. The United States claimed that this practice violated the Blue River Decree's provisions requiring Denver to obtain permission from the Secretary of the Interior before exchanging or diverting Blue River water, and sought an order enforcing the decree. The Federal Court agreed with the United States, and entered a second decree (the "1964 Decree") which, inter alia, prohibited Denver from exchanging or diverting water in a manner inconsistent with the terms of the Blue River Decree.

In 1977, Denver refused the Secretary of Interior's requests to release from Dillon Reservoir over 28,000 A.F. of water necessary to complete the fill of Green Mountain Reservoir. The Federal Court found that Denver's actions violated the terms of both the Blue River Decree and the 1964 Decree. The Federal Court prohibited Denver from diverting Blue River water until Green Mountain Reservoir was assured of being filled each year. *See United States v. Northern Colo. Water Conservancy Dist.*, 608 F.2d at 429; *see also Denver v. United States*, 935 F.2d at 1147 (rejecting as contrary to the Blue River Decree Denver's unilateral attempt to exchange water from its new reservoirs on the western slope for additional Blue River water to be diverted to Denver).

The cases discussed above provide paradigmatic examples of behavior and claims that modify or interfere with the terms of the Blue River Decree. Thus, in those instances the Federal Court properly intervened to enforce the decree. In contrast, Denver's application for a refill right with a 1987 prior-ity date does not concern or interfere with any provision of the Blue River Decree. The refill right is junior to all the appropriations adjudicated in 1955, and, according to the terms of the Water Court's judgment, cannot be exercised to the detriment of any priority awarded in the Blue River Decree. Hence, unlike the scenario in *Hazard*, the Water Court's decree does not radically change the existing decree or affect "the *same priority* to the use of water in the same district." *Hazard*, 87 Colo. at 367, 287 P. at 855 (emphasis added).

Furthermore, Denver's claim to a refill right at Dillon Reservoir was not even among the subjects addressed by the Blue River Decree. The refill right was not, and could not have been, before the Federal Court in 1955 because Denver's first appropriation date for the refill of the reservoir was 1965. *Cf. Faden*, 93 Colo. at 364, 28 P.2d at 249 (where the subsequent proceeding seeks "to attain an objective which could not have been accomplished" in the previous proceeding, there is no jurisdictional conflict).

As the Water Court explained, the Federal Court in the Blue River Decree addressed only those relative priorities at issue at the time of adjudication. The Federal Court enjoined the parties from asserting in the future any priorities different from those described in the Blue River Decree. Accordingly, the Federal Court has thwarted subsequent efforts by Denver to modify, intentionally or otherwise, the United States' senior rights to Blue River water. In this case, however, Denver's application does not injure or affect the rights of any priority described in the Blue River Decree, nor does Denver seek to modify a priority described in the Blue River Decree. Instead, Denver has sought adjudication of a new water right, entirely distinct from those adjudicated in the Blue River Decree.[8]

---

8. Similarly, in *City & County of Denver v. Colorado River Water Conservancy Dist.*, 696 P.2d 730 (Colo.1985), Denver sought confirmation of an appropriation from Straight Creek, a tributary of the Blue River upstream from the Green Mountain Reservoir. In that case, no party objected to the state court's jurisdiction on the grounds that the Blue River Decree furnished the Federal Court with exclusive jurisdiction over the claim. We ultimately held that the state court had jurisdiction over Denver's application. *See id.* at 740.

The Federal Court's continuing jurisdiction is limited to the purpose of effectuating the objectives of the Blue River Decree. As explained above, Denver's refill right does not interfere with the objectives of the Blue River Decree because Denver's refill right is subject to all of the provisions of the Blue River Decree. *See generally Aspen Wilderness Workshop, Inc. v. Hines Highlands Ltd. Partnership,* 929 P.2d 718, 724 (Colo.1996) (senior rights are not injured by junior diversions as long as those diversions occur in priority). Denver can, and must, comply with the provisions of both the Blue River Decree and the Water Court's decree.

Consequently, Denver's application for a refill right with respect to Dillon Reservoir did not implicate the Federal Court's exclusive jurisdiction to implement the Blue River Decree. We hold, therefore, that the Water Court possessed subject matter jurisdiction over Denver's application.

## V.

Denver's application for a refill right at Dillon Reservoir involved a water matter over which the Water Court had special statutory jurisdiction. Denver's application had neither the object nor the effect of modifying the provisions of the Blue River Decree. Thus, the application did not invoke the exclusive jurisdiction of the Federal Court to modify or enforce the Blue River Decree. Accordingly, the Water Court possessed jurisdiction to enter a judgment concerning Denver's application, and we affirm its judgment and decree.

HOBBS, J., does not participate.