In re the MARRIAGE OF Kelly L. ROOSA, n/k/a Kelly L. Bryan, Appellee,

and

Steven E. Roosa, Appellant.

No. 02CA2533.

Colorado Court of Appeals, Div. IV.

March 11, 2004.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3) and

§ 24–51–1105, C.R.S.2003.

Heckenbach Carlton, LLP, David W. Heckenbach, Lone Tree, Colorado, for Appellee.

Allen C. Christensen, Attorney at Law, P.C., Allen C. Christensen, Edwards, Colorado, for Appellant.

Opinion by Judge LOEB.

In this post-dissolution of marriage case, this court ordered Steven E. Roosa (father) to show cause why his appeal should not be dismissed for failure to obtain district court review of a magistrate's order and for lack of a final, appealable order. We have considered the record and the parties' briefs on the jurisdictional issues and now discharge the ·order to show cause in part, make it absolute in part, dismiss the appeal, and remand for further proceedings.

The original 1998 decree provided for the parties' joint legal custody of their three

children, with Kelly L. Bryan (mother) as the primary residential custodian, and father's payment of child support. The following year, the parties stipulated to, and the court ordered, split residential custody and a concomitant reduction in child support, with the two sons living with father in Colorado and the daughter living with mother in Florida. The provision for joint legal custody was not modified.

As to the property division, the original decree provided that the marital residence in Colorado was to be listed and sold, with the proceeds evenly divided after payment of certain expenses. However, the court subsequently approved the parties' stipulation allowing father to retain the residence in exchange for payment to mother.

In 2001, mother filed the two motions at issue in this appeal. First, she requested entry of an order, pursuant to § 14–10–129, C.R.S.2003, to modify the primary residence of the children, to reflect that the two sons were again living with her by agreement of the parties, a corresponding modification of child support, and enforcement of the provisions of the decree requiring that father pay for certain insurance coverage. Second, she filed a motion for enforcement and clarification of the modified order regarding payment of her share of the equity in the marital residence.

Prior to hearing these two motions, the magistrate informed the parties that a hearing before a magistrate "for changing ... the primary residence requires a consent by the parties." The magistrate requested, and the parties filed, written consents to having the magistrate hear the issue of the children's change of residence. The magistrate then conducted a hearing and issued two orders from which father now appeals.

In a July 2002 order, the magistrate ordered that mother was to receive the entire net proceeds of the sale of father's Florida property. The proceeds were to be applied first to retroactive child support, the amount of which was reserved for subsequent determination, then to deferred interest on the note payable to mother in connection with the marital residence, and then to child sup-

port, maintenance, and interest arrearages in the amount of $6,000.

In the same order, the magistrate ordered that the children were to reside with mother, but left the parenting time schedule unresolved. Because mother had not requested any modification of the previous order for joint legal custody, the magistrate noted that the parties were to "continue to share joint decision-making for the minor children."

Soon after entry of the July 2002 order, father filed a motion pursuant to C.R.C.P. 60(b) requesting reconsideration or modification of the order to reflect the parties' alleged agreement that mother would receive only a part of the net proceeds from the sale of the Florida property.

In a December 2002 order, the magistrate denied the C.R.C.P. 60(b) motion and ordered father to pay increased child support, retroactive to September 2001. Citing inadequate evidence of the amount of arrearages, the magistrate again declined to enter an amount due; instead, the parties were instructed to calculate the amount, and if they were unable to agree, they were granted leave to file a motion requesting the magistrate to determine the amount.

No district court review of these orders was requested. Father then appealed the July 2002 and December 2002 orders to this court. Questioning the finality of these orders, the lack of district court review, and the magistrate's jurisdiction over these issues, we requested the parties to show cause why the appeal should not be dismissed. The parties filed simultaneous briefs on the issues.

## I. Magistrate's Jurisdiction

We first conclude that the magistrate had jurisdiction to consider mother's motions.

### A. Family Law Terminology

In order to analyze the jurisdictional issue properly, it is necessary to understand and clarify the changes in terminology used in family law cases in the intervening years between the original decree and the magistrate's July 2002 order.

Effective February 1, 1999, the General Assembly enacted a statutory framework in which the term "custody" was abandoned and changed to "parental responsibilities," which includes both "decision-making responsibilities" and "parenting time," as those terms are now used. *See* §§ 14–10–103(4), 14–10–124(1.5), C.R.S.2003; *In re Marriage of Stewart*, 43 P.3d 740 (Colo.App.2002)(change was effective February 1, 1999, as provided in § 14–10–103(4)); *In re Marriage of Schenck*, 39 P.3d 1250 (Colo.App.2001); *see also* Angela R. Arkin & Robert T. Hines, III, *Addressing New Standards for Modification Under the Parental Responsibility Act*, 28 Colo. Law. 67 (June 1999); A. Elizabeth Henson, et al., *Elimination of "Custody" in Colorado: The Impact of H.B. 1183*, 27 Colo. Law. 83 (Sept.1998).

In turn, the terms "joint custody" and "legal custody" were replaced by "decision-making responsibilities." *Compare* Colo. Sess. Laws 1983, ch. 178, § 14–10–123.5(1) at 645 (defining "joint custody" as "an order awarding legal custody of the minor child to both parties *and* which provides that all decisions regarding the health, education and general welfare of the child shall be made jointly"), *with* § 14–10–124(1.5)(b),(court allocates "decision-making responsibility with respect to each issue affecting the child"), § 14–10–124(6), C.R.S.2003 (contemplating that decision-making includes medical issues), and § 14–10–130(1) C.R.S.2003 (expressly indicating that decision-making relates to education, health care, and religion). *See generally People in Interest of A.M.K.*, 68 P.3d 563 (Colo.App.2003)(trial court order on decision-making authority included religious, medical, day-to-day matters and education issues).

Similarly, the terms "residential custody" and "physical custody" and terms relating to the residential or physical placement of the child (including what was formerly known as visitation rights) all now appear to be encompassed by the term "parenting time," as a result of the 1999 statutory changes. *See* § 14–10–129 (modification of parenting time governs changes in a child's residence, including "the party with whom the child resides a majority of the time"); § 14–10–103(3), C.R.S.2003 (as of July 1, 1993, changing the term "visitation" to "parenting time"); §§ 14–10.5–102, 14–10.5–104, C.R.S. 2003 (the Parenting Time Enforcement Act provides the child with access to the "parent with whom the child does not reside the majority of the time"); *N.A.H v. S.L.S.*, 9 P.3d 354, 359 n. 2 (Colo.2000)("The term 'parenting time' replaces notions of custody and visitation rights. The General Assembly recently clarified that children are not to be treated as property and apportioned between parents. Accordingly, we no longer use the term custody, but rather parental rights and responsibilities. Courts no longer adjudicate custody and visitation, but rather divide parenting time." (citation omitted)); *People in Interest of A.M.K.*, *supra* (contrasting primary residential care with decision-making authority).

### B. Jurisdictional Analysis

Mother's motions were filed after January 1, 2000, and, therefore, this case is governed by the Colorado Rules for Magistrates (C.R.M.) in effect at the time those motions were filed. *See People ex rel. Garner v. Garner*, 33 P.3d 1239, 1241 (Colo.App. 2001)(date of filing of motion at issue, not date of commencement of case, dictates application of new C.R.M.).

■ Under the version of C.R.M. 6(b) applicable to this case, in family law cases, a district court magistrate may perform the duties specified in §§ 13–5–301 to 13–5–305, C.R.S.2003. See *In re Marriage of Malewicz*, 60 P.3d 772, 774 (Colo.App.2002); *cf.* C.R.M. 6(b) (rule revised effective Nov. 6, 2003, distinguishing functions of district court magistrates and family law magistrates in family law cases). Under these sections, family law magistrates have the power and authority to modify and enforce orders for child support and to conduct hearings upon motions and postjudgment proceedings under the Uniform Dissolution of Marriage Act (UDMA), § 14–10–101, et seq., C.R.S.2003. Section 13–5–301(3)(a), (3)(e)(V.5), (3)(e)(VII)(B), C.R.S.2003. Accordingly, the magistrate clearly had jurisdiction over mother's motions regarding the child support and property issues.

■ It is less clear whether the magistrate had jurisdiction over the parenting time issue. Section 13–5–301(3)(e)(V), C.R.S.2003, provides that family law magistrates have the power and authority to conduct hearings under the UDMA regarding "[p]arenting time, and the modification thereof, including motions to restrict parenting time or parental contact, *where the allocation of parental responsibilities is not an issue*" (emphasis added).

In *In re Marriage of Ferris*, 75 P.3d 1170 (Colo.App.2003), a division of this court recently noted, without resolving, an ambiguity in this statute. Section 13–5–301(3)(e)(V) grants magistrates authority to hear certain parenting time issues, but simultaneously prohibits them from hearing issues as to the allocation of parental responsibilities. This statute is inconsistent, given that parental responsibilities include parenting time. *See* § 14–10–124(1.5); *In re Marriage of Schenck, supra; cf.* § 14–10–112, C.R.S.2003 (illustration of additional inconsistent use of the term; subsections (1) and (2) redundantly refer to "parental responsibilities ... and parenting time," while subsection (6) correctly refers to "decision-making responsibility[ ] or parenting time").

■ Where possible, a statute should be interpreted to give effect to all its parts. We presume that the legislature intends a just and reasonable result when it enacts a statute, and we will not read a statute to provide an unreasonable or absurd result. *People v. Madden*, —— P.3d ——, 2003 WL 21939695 (Colo.App. No. 02CA0024, Aug. 14, 2003). Furthermore, courts may correct evident errors in words or figures so as to give an act its manifest meaning. *Capp v. People*, 64 Colo. 58, 170 P. 399 (1917)(reference in statute to one section, where another section was plainly intended, was subject to correction by the court); *People v. Madden, supra* (reference in statute to nonexistent section is merely a typographical error that may be corrected by the court, thereby allowing logical reading of statute).

Here, a logical and reasonable interpretation of § 13–5–301(3)(e)(V), in conjunction with the UDMA, leads us to conclude that the General Assembly meant to allow magistrates to resolve parenting time issues, but not decision-making responsibilities. *See Town of Erie v. Eason*, 18 P.3d 1271 (Colo. 2001)(if the result is absurd, court may interpret the statute by considering laws upon the same or similar subjects). Because parenting time together with decision-making responsibilities constitute parental responsibilities, use of the term "parental responsibilities" in § 13–5–301(3)(e)(V), rather than "decision-making responsibilities," was obviously an error that we may correct. *See Capp v. People, supra; People v. Madden, supra.*

Thus, we conclude that the magistrate had jurisdiction to consider the parenting time issues, including the residential placement, in this case. The magistrate was not asked to and did not change the original grant of joint legal custody, a matter over which he lacked jurisdiction. *See In re Marriage of Ferris, supra* (where mother filed motion to modify decision-making responsibility, parenting time, and child support, magistrate's order was vacated for lack of jurisdiction).

We are not persuaded otherwise by mother's argument that because father is not appealing the issue of parenting time, *Ferris* is inapplicable. While it is true that father's advisory list of issues in his notice of appeal does not include parenting time, the fact that the magistrate ruled on a motion that includes parenting time warrants our resolution of the jurisdictional issue. *See In re Marriage of Ferris, supra* (even though magistrate had jurisdiction over child support, fact that decision-making was at issue resulted in vacation of entire order). Furthermore, because child support was collateral to, and dependent upon, the amount of parenting time awarded, the issues were inextricably intertwined. *See In re Marriage of Redford*, 776 P.2d 1149 (Colo.App.1989)(number of overnights must be determined before child support may be calculated).

Nor are we persuaded otherwise by the fact that the parties consented to the magistrate hearing mother's motions. Their consent is irrelevant, because the magistrate had authority to hear the motions regardless of that consent. *See In re Marriage of Phelps*, 74 P.3d 506, 509 (Colo.App.2003).

## II. Appellate Jurisdiction

■ Because the parties' consent was not required for the magistrate's jurisdiction, a motion for district court review was necessary prior to appeal of these orders. *See* C.R.M. 7(a); *People ex rel. Garner v. Garner, supra.* However, for reasons discussed below, we conclude that district court review can be had only when the magistrate issues a *final* order.

### A. Parenting Time and Child Support Order

Here, there was no final order regarding parenting time and child support because the amount of retroactive child support and the specifics of the parenting time were left unresolved. Even if the parties were able to agree on these issues, given the posture of the magistrate's rulings, the magistrate would still need to adopt their agreement to finalize the order. *See In re Marriage of Micaletti,* 796 P.2d 54 (Colo.App.1990)(court is not bound by parties' agreements regarding support and custody).

Piecemeal review of orders and judgments that do not fully resolve an issue or claim is generally discouraged at any level of review, and the law in various areas specifically regulates this inefficient approach. *See, e.g., Fabec v. Beck,* 922 P.2d 330 (Colo.1996)(in ballot initiative, plaintiffs must exhaust available and applicable administrative remedies to prevent piecemeal application for judicial relief); *Mission Viejo Co. v. Willows Water Dist.,* 818 P.2d 254 (Colo.1991)(C.R.C.P.54(b) certification avoids piecemeal and possibly duplicative appellate review); *UPS, Inc. v. Indus. Claim Appeals Office,* 988 P.2d 1146 (Colo.App.1999)(absent specific legislation to the contrary, to avoid piecemeal review, the amount of the penalty in a workers' compensation case must be determined before the ruling as to penalties is final for purposes of judicial review); *cf.* § 24–10–108, C.R.S.2003 (statute specifically allowing interlocutory appeal of decision on sovereign immunity as a final judgment); *In re Marriage of Mockelmann,* 944 P.2d 670, 671 (Colo.App.1997) (temporary orders under § 14–10–108 are reviewable as final judgments because they establish the financial rights and obligations of the parties until the entry of permanent orders).

■ We perceive no reason why the review or appeal of a magistrate's order should be treated any differently. Thus, we conclude that, in the interest of judicial economy, a magistrate's order must fully resolve an issue before it may be reviewed by the district court or appealed to the court of appeals. Indeed, when a magistrate's order is appealed directly to the court of appeals, *see* C.R.M. 7(b); § 13–5–301(3)(e)(VI)(A), C.R.S.2003; *In re Marriage of Malewicz, supra,* this court requires a final order. *See City of Grand Junction v. City & County of Denver,* 960 P.2d 675 (Colo.1998)(under C.A.R. 1(a)(1), appeal may be taken only from a final judgment of a district, probate, or juvenile court; appellate court does not review interlocutory orders absent specific authorization by statute or rule); *Hait v. Miller,* 38 Colo.App. 503, 559 P.2d 260 (1977)(except as provided in C.R.C.P. 54(b), court of appeals has jurisdiction over only final judgments).

The C.R.M. contain no specific authorization for review or appeal of interlocutory orders of a magistrate, as would be required under *City of Grand Junction v. City & County of Denver, supra.* Indeed, as other divisions of this court have noted, guidance on the procedures applicable to review of magistrate's orders is yet to be developed. *See In re Marriage of Schmidt,* 42 P.3d 81 (Colo.App.2002)(although statute instructs supreme court to promulgate rules of procedure to govern family law magistrates, to date the supreme court has promulgated only the C.R.M., which do not contain a separate section on procedure and address only a few areas of procedure); *In re Marriage of Talbott,* 43 P.3d 734 (Colo.App.2002).

In the absence of such guidance, we conclude that a magistrate's order must fully resolve the issues before the time for district court review begins to run. Here, because the parenting time and child support rulings are not yet final, the time for district court review has not yet run as to mother's first motion. Accordingly, this portion of the appeal must be dismissed without prejudice for

lack of a final, appealable order. *See* C.R.M. 7(a)(4).

### B. Property Division Order

 The property motion requires a different analysis. The magistrate fully resolved that motion by granting mother the requested relief in the July 2002 order, and therefore that portion of that order was final when entered. *See Brody v. Bock,* 897 P.2d 769 (Colo.1995)(where order completely determined parties' rights with respect to distinct claim, that portion of the trial court's order constituted a final judgment as to that claim for purposes of appeal); *Gergel v. High View Homes, L.L.C.,* 58 P.3d 1132 (Colo.App.2002)(final judgment is a complete determination of the rights of the parties involved).

In the December 2002 order, the magistrate then denied father's C.R.C.P. 60(b) motion for reconsideration or modification. However, that portion of the magistrate's December 2002 order issued in response to father's motion for reconsideration was void. *See In re Marriage of Phelps, supra* (declaring magistrate's ruling on motion for reconsideration void); *In re Marriage of Tonn,* 53 P.3d 1185, 1187 (Colo.App.2002)(rules governing magistrates do not authorize any motion except a motion for review).

Nonetheless, because father filed his motion for reconsideration within fifteen days of the magistrate's written order, and the motion was erroneously acted upon by the magistrate, the motion for reconsideration may be construed as a motion for district court review. *See In re Marriage of Phelps, supra; In re Marriage of Spector,* 867 P.2d 181 (Colo.App.1993)(under former C.R.M., time for filing motion for review did not begin running until magistrate signed written order). Accordingly, the appeal regarding the property motion must be dismissed, and the case must be remanded for district court review of the magistrate's order on the property issues. *See In re Marriage of Malewicz, supra* (once motion for district court review is filed, the district court reviewing judge had to act pursuant to C.R.M. 7(a)(2) to create a final order).

The order to show cause is discharged in part and made absolute in part, the appeal is dismissed, and the case is remanded for the magistrate's entry of a final order on parenting time and child support and for district court review of the magistrate's final order on property issues.

Judge CASEBOLT and Judge GRAHAM concur.