The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 22, 2026

**2026COA4**

**No. 24CA1985, *In re Parental Responsibilities Concerning W.P.A.S.* — Family Law — Allocation of Parental Responsibilities — Attorney Fees; Appeals — Final Appealable Order**

A division of the court of appeals concludes that an order allocating parental responsibilities in a proceeding that does not involve a dissolution of marriage is final and appealable, notwithstanding an unresolved request for attorney fees under section 14-10-119, C.R.S. 2025, distinguishing *In re Marriage of Hill*, 166 P.3d 269 (Colo. App. 2007).

COLORADO COURT OF APPEALS  **2026COA4**

Court of Appeals No. 24CA1985
Routt County District Court No. 21DR30033
Honorable Mary C. Hoak, Judge

In re the Parental Responsibilities Concerning W.P.A.S., a Child,

and Concerning Jonathan William Sanders,

Appellant,

and

Kristen Renea Andrea,

Appellee.

APPEAL DISMISSED IN PART, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Lum and Moultrie, JJ., concur

Announced January 22, 2026

Anne Whalen Gill, LLC, Anne Whalen Gill, Castle Rock, Colorado, for Appellant

Belzer Law, Aaron B. Belzer, Ashlee N. Hoffmann, Boulder, Colorado, for Appellee

¶ 1 In this allocation of parental responsibilities (APR) proceeding, Jonathan William Sanders (father) appeals the permanent order allocating parental responsibilities (APR order) concerning his child with Kristen Renea Andrea (mother). Father also appeals the district court's award of attorney fees to mother under section 14-10-119, C.R.S. 2025.

¶ 2 However, before we can address the merits of father's challenge to the APR order, we must first resolve whether he timely filed a notice of appeal as to that order. This appeal requires us to consider, for the first time in a published opinion, the application of the rule of finality announced in In re Marriage of Hill, 166 P.3d 269 (Colo. App. 2007), to an APR order in a proceeding not involving a dissolution of marriage. In Hill, a division of this court held that orders in a dissolution of marriage proceeding are not final until all matters are resolved, including any request for attorney fees under section 14-10-119. Because we conclude that this rule does not apply to APR proceedings unrelated to the dissolution of a marriage, and because father's notice of appeal as to the APR order was filed well after the forty-nine-day window for him to appeal under C.A.R. 4(a)(1), we dismiss the portion of father's appeal challenging the

APR order. But because the district court made unsupported findings when awarding mother attorney fees, we reverse the award of attorney fees and remand the case for further proceedings.

## I. Background

¶ 3     The parties have one child. In 2021, father petitioned for an APR as to the child.

¶ 4     In her proposed APR, mother sought to relocate with the child from Colorado to Ohio. The district court held a permanent orders hearing as to parenting time and decision-making over multiple days in July and August of 2023, and on August 21, 2023, the court issued the APR order. The court found that it was in the child's best interests to relocate to Ohio with mother and created a regular parenting time schedule for father. The court allocated mother sole decision-making responsibilities.

¶ 5     Over the next few months, the district court held a series of hearings on the parties' financial circumstances for the purpose of determining child support. On February 5, 2024, the court issued a written child support order, requiring father to pay mother approximately $1,800 per month.

¶ 6    On that same date, the court issued a separate written order requiring father to pay half of mother's attorney fees incurred in the case under section 14-10-119 and ordered mother to file a corresponding affidavit of attorney fees.  Shortly thereafter, mother filed attorney fee affidavits; father objected, asserting that the affidavits failed to address the reasonableness of mother's attorney fees.  Neither party requested a hearing, and on September 25, 2024, the district court entered an award of attorney fees in favor of mother in the amount of $79,822.  Father filed his notice of appeal on November 12, 2024.

## II.    Father's Appeal of the APR Order Is Untimely

¶ 7    Father filed his notice of appeal nearly fifteen months after the district court entered the APR order and over nine months after the entry of the child support order.  Thus, before we can consider father's challenge to the APR order, we must resolve whether his appeal of that order was timely.  *See Smith v. City & County of Denver*, 2025 COA 70, ¶ 12 (holding that an appellate court has an independent duty to ensure that it has jurisdiction).

¶ 8    Accordingly, this court issued an order requiring father to show cause why his appeal should not be dismissed as to the APR

3

order and both of the February 5, 2024, orders[1] because his notice of appeal was filed more than forty-nine days after those orders. After father filed a response to the show cause order, a motions division of this court deferred consideration of his appeal's timeliness to the merits division.

¶ 9     We now hold that because father's appeal was untimely as to the APR order, we lack jurisdiction for appellate review and must dismiss his appeal as to that order.

A.     A Timely Notice of Appeal as a Jurisdictional Prerequisite

¶ 10     Our jurisdiction is generally limited to the review of final judgments and orders, *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14; § 13-4-102(1), C.R.S. 2025; C.A.R. 1(a)(1), and once an order or judgment is final, the timely filing of a notice of appeal is a jurisdictional prerequisite for appellate review, *In re Marriage of Buck*, 60 P.3d 788, 789 (Colo. App. 2002).  Pursuant to

---

[1] Although father listed the February 5, 2024, orders in his notice of appeal, he asserts no challenge to either order in his opening brief. We therefore deem his appeal of the February 5, 2024, orders to be abandoned.  *See Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 38 (holding that an issue not presented or argued in the party's briefing was abandoned).

C.A.R. 4(a)(1), a party has forty-nine days after the entry of a final judgment or order in which to file a notice of appeal.

## B. Attorney Fees and Finality

¶ 11 A judgment is typically final if it "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *Schaden v. DIA Brewing Co.*, 2021 CO 4M, ¶ 46 (citation omitted). However, "[a] judgment on the merits is final for purposes of appeal notwithstanding an unresolved issue of attorney fees." *L.H.M. Corp.*, ¶ 2 (reaffirming *Baldwin v. Bright Mortg. Co.*, 757 P.2d 1072, 1074 (Colo. 1988)).

## C. Discussion

¶ 12 Father argues that his notice of appeal, which was filed within forty-nine days of the September 25, 2024, order awarding mother attorney fees, was timely as to the APR order because there was no final, appealable order or judgment for us to review until the court had fully resolved mother's request for attorney fees under section 14-10-119.

¶ 13 In support, father cites *Hill*, 166 P.3d at 272, in which a division of this court held that an award of attorney fees under

section 14-10-119 is an "integral and substantive part of equitably disposing of the parties' assets and liabilities and dissolving the marriage." Therefore, the permanent orders in a dissolution proceeding are not final for purposes of appellate review until an attorney fee request under that statute has been resolved and reduced to a sum certain. *Id.*

¶ 14     Specifically, Hill explained that "[w]hen considering a petition for dissolution, a court must address several intertwined issues, including parental responsibilities, child support, [maintenance], and disposition of property. These are not separate claims; they are issues that are part and parcel of dissolving the marriage." *Id.* Hill also observed that when equitably apportioning attorney fees under section 14-10-119, the district court must consider the financial resources of both parties, and therefore the court must "make findings concerning [the parties'] relative incomes, assets, and liabilities." *Id.*

¶ 15     Hill further reasoned that an unresolved request for attorney fees prevents finality in a dissolution proceeding because "when an appellate court reverses a [marital] property division, the [district] court must make a new property division, and, because the issues

6

are 'inextricably intertwined,' it must also reconsider the award of maintenance and the apportionment of attorney fees in light of the new property division." *Id.* (quoting *In re Marriage of Antuna*, 8 P.3d 589, 595 (Colo. App. 2000)).

### D. *Hill* Is Inapplicable to APR Orders Outside of a Dissolution of Marriage Proceeding

¶ 16    Mother argues that our supreme court implicitly overruled *Hill* when it "reaffirm[ed] the bright-line rule [that a] judgment on the merits is final for purposes of appeal notwithstanding an unresolved issue of attorney fees." *L.H.M. Corp.*, 2021 CO 78, ¶ 2. Under such a "bright-line" rule, the appeal of the APR order would clearly be untimely. But we need not decide whether *L.H.M. Corp.* overruled *Hill* because even if *Hill* remains good law, we conclude that it is inapplicable to an APR proceeding that is unrelated to the dissolution of a marriage.

¶ 17    In a dissolution of marriage proceeding, the court must divide the parties' marital assets with the aim of "allow[ing] the parties to disentangle themselves financially and provide[ing] some measure of closure." *In re Marriage of Hunt*, 909 P.2d 525, 540 (Colo. 1995). In an APR proceeding that is unrelated to the dissolution of a

marriage, there is no division of financial assets. Instead, the district court is primarily concerned with crafting a parenting time and decision-making arrangement that serves the child's best interests. *See* § 14-10-124(1.5)(a), (b), C.R.S. 2025 (listing the various factors on which the court shall make findings, and consider, in accordance with the child's best interests when allocating parenting time and decision-making responsibilities); *In re Marriage of Barker*, 251 P.3d 591, 592 (Colo. App. 2010) (best interests are always the controlling factor for any parenting time order). Thus, while the allocation of the financial burden of attorney fees is "part and parcel of dissolving the marriage," *Hill*, 166 P.3d at 272, it is not so integral to the process of allocating parental responsibilities.

¶ 18 We acknowledge that during an APR proceeding, the court considers the parties' respective finances when crafting a corresponding child support order, which is then intertwined with and dependent upon the court's determination of parenting time. *In re Marriage of Roosa*, 89 P.3d 524, 528 (Colo. App. 2004). Yet, even when determining child support, the court's ultimate objective is to act in the best interests of the child. *See People v. Martinez*, 70

P.3d 474, 478 (Colo. 2003) (recognizing that a child support order should serve the best interests of the children).

¶ 19     In contrast, while a district court in a dissolution of marriage proceeding must, if applicable, allocate parental responsibilities in the child's best interests, § 14-10-124(1.5)(a), (b), such a proceeding also remains squarely focused on "equitably disposing of the parties' assets and liabilities." *Hill*, 166 P.3d at 272; *see In re Marriage of Nelson*, 2012 COA 205, ¶¶ 13-19 (holding that an order resolving a post-decree motion to modify maintenance is final and appealable notwithstanding unresolved section 14-10-119 attorney fees because the issue before the court is not the equitable division of the marital estate, but is instead whether a substantial and continuing change of circumstances has made maintenance unfair).

¶ 20     Moreover, in a dissolution of marriage proceeding, when the district court weighs the "inextricably intertwined" issues of the marital property division and maintenance, those decisions then inform the court's allocation of attorney fees under section 14-10-119.  *See Hill*, 166 P.3d at 272; *see also In re Marriage of de Koning*, 2016 CO 2, ¶ 26 ("[A]wards of spousal maintenance and [section

14-10-119] attorney's fees flow from the property distribution, which is typically the linchpin of financial permanent orders.").

¶ 21     But the same is not true in an APR proceeding unrelated to a dissolution of marriage.  APR orders are not financial; they allocate parenting time and decision-making authority between the parents.  And although child support is financial, its primary purpose is to provide "an adequate standard of support for [the] children." § 14-10-115(1)(a)(I), C.R.S. 2025.  It is different from property division, maintenance, and attorney fees under section 14-10-119, which are aimed at putting spouses on equitable financial footing.  Indeed, unlike a property division in a dissolution of marriage proceeding — which, when reversed on appeal, necessitates the district court's reconsideration of section 14-10-119 attorney fees, *see de Koning,* ¶ 26; *Hill,* 166 P.3d at 272 — we are not aware of any legal authority suggesting that the reversal of an APR or child support order requires the same.

¶ 22     In sum, given the differences between dissolution of marriage proceedings and APR proceedings not related to the dissolution of marriage, we conclude that the holding of *Hill,* 166 P.3d at 271-72, does not extend to such APR proceedings.  Instead, permanent

orders allocating parental responsibilities are final and appealable once the intertwined issues of parental responsibilities and child support are resolved, and an unresolved request for attorney fees under section 14-10-119 does not prevent finality. *See L.H.M. Corp.*, ¶¶ 2, 23; *Roosa*, 89 P.3d at 528. Accordingly, the APR order was final for purposes of appeal once the district court issued the related child support order on February 5, 2024. Thus, father's November 12, 2024, notice of appeal, which was filed months after the child support order, was untimely as to the APR order. *See* C.A.R. 4(a)(1). We therefore lack jurisdiction to consider father's appeal of the APR order and dismiss his appeal as to that issue. *See Buck*, 60 P.3d at 789.

### III. Award of Attorney Fees to Mother

¶ 23 Father next asserts the district court abused its discretion when awarding mother $79,822 in attorney fees under section 14-10-119. While father does not challenge the district court's finding that he should be responsible for half of mother's attorney fees, he contends that the court's determination of the dollar amount of the attorney fee award was not accompanied by

sufficient factual findings and was otherwise unsupported by the record. We agree.

### A. Applicable Legal Standards

¶ 24 To ensure that a party does not suffer undue economic hardship from the proceedings, a court in an APR proceeding may order a party to pay a reasonable amount of the other party's attorney fees and costs based on the parties' relative economic circumstances. § 14-10-119; *In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006). In addition to weighing the financial resources of each party, the court must also consider the reasonableness of the hourly rate and the necessity for the hours billed. *See de Koning*, ¶ 26; *In re Marriage of Aragon*, 2019 COA 76, ¶ 9.

¶ 25 When assessing the reasonableness of the attorney fees that a party seeks to recover, the court must typically calculate a lodestar amount, which represents the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Aragon*, ¶¶ 9, 15. The lodestar amount is a starting point and carries with it a presumption of reasonableness. *Id.* at ¶¶ 15, 17.

¶ 26    The court may adjust the lodestar amount based on factors such as (1) the time and labor required; (2) the novelty and difficulty of the issues involved; (3) the fee customarily charged in the locality for similar legal services; (4) the experience, reputation, and ability of the lawyer or lawyers performing the services; (5) the nature of the fee agreement; and (6) the nature and length of the professional relationship with the client.  *Id.* at ¶ 15 (citing Colo. RPC 1.5(a)(1), (4), (6)); *see also Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 46 ("A trial court should award attorney fees based on the prevailing market rate by private lawyers in the community.").

¶ 27    We review a district court's decision to award attorney fees for an abuse of discretion.  *In re Parental Responsibilities Concerning M.E.R-L.*, 2020 COA 173, ¶ 33.  A trial court abuses its discretion when the court's decision is based on a misapplication of law or is manifestly arbitrary, unreasonable, or unfair.  *In re Marriage of Young*, 2021 COA 96, ¶ 7.  We may not disturb the amount of fees awarded unless it is patently erroneous and unsupported by the evidence.  *See Yaekle v. Andrews*, 169 P.3d 196, 201 (Colo. App. 2007), *aff'd on other grounds*, 195 P.3d 1101 (Colo. 2008).

## B. Discussion

¶ 28 After the district court determined that father should pay half of mother's attorney fees, mother filed attorney fee affidavits from the two different law firms that had represented her during the proceedings. The affidavits averred that mother had incurred approximately $221,000 in attorney fees. While the affidavits showed the hourly rate for each attorney and legal support staff who worked on the case, they did not indicate how many hours each individual spent on the case. However, mother did attach billing statements as exhibits to the fee affidavits.

¶ 29 Father filed an objection, asserting that mother had failed to demonstrate that the rates charged and time spent by her attorneys were reasonable. Because neither party requested a hearing, the district court ruled based on the written record. The court found that while mother had submitted fee affidavits and billing statements, she had failed to provide any of her attorneys' engagement letters or fee agreements.

¶ 30 The court also found that the affidavits had failed to "itemize[] the total number of hours spent on the case, either per attorney or combined. Instead, [m]other's attorneys have submitted a

14

combined total of 299 pages of billing invoices." Accordingly, the court expressed frustration that it was "impossible for [it] to calculate the lodestar amount" because the court was "not in a position to add time entries over the span of [twenty-four] months from [twenty-three] different people in two different law firms." Moreover, the court found that "[m]other's attorneys have not provided any evidence demonstrating whether their hourly fees are based on the prevailing market rate by other lawyers in the community" and had "failed to specify the nature and length of their professional relationship with [m]other, failed to provide any evidence in their affidavits regarding their experience, reputation, and ability, and failed to specify whether their fee is fixed or contingent."

¶ 31 Yet, despite the shortcomings of mother's attorney fee affidavits and billing records, "for the sake of efficiency," the district court calculated a lodestar amount of $204,899 on mother's behalf based on her attorneys' billing statements. In other words, the court acknowledged that mother's attorney fee request "[was] deficient because [she] has not provided evidence or even a statement as to the prevailing market rates" but nevertheless found

15

that the rates charged by her attorneys were reasonable for the locality because "the Court has awarded similar billing rates in analogous cases." The court then reduced the lodestar amount by twenty percent to account for the numerous deficiencies in mother's attorney fee affidavits.

¶ 32 As an initial matter, father argues that, given mother's failure to itemize the per-attorney hours spent on the case, the district court erred by undertaking such an exercise on her behalf when calculating the lodestar amount. We agree with father that the burden of justifying attorney fees rests with the party seeking such fees. *Payan*, ¶ 35. But we disagree with father that the district court abused its discretion by using the numerous billing statements that mother provided in determining the number of hours reasonably expended on the case.

¶ 33 Though not every entry identified the specific attorney or paralegal who took the action, each one described the task undertaken, the time billed for that task, and the hourly rate billed. (The billing records from one of the law firms identified the billing individual by initials; the records from the other law firm did not.) The accompanying affidavits identified the hourly rate charged by

individual lawyers and paralegals. The court could properly glean from these entries how many hours were expended and whether they were reasonable. Thus, we cannot say that the court's use of this information to arrive at a number of hours reasonably spent on the case was manifestly arbitrary, unreasonable, or unfair.

¶ 34     We agree with father, however, that the district court erred by finding that the hourly rates charged by mother's attorneys were reasonable despite acknowledging that she had "not submitted any evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *See Payan*, ¶ 16 (noting that, in reviewing a court's attorney fee award for abuse of discretion, we will not disturb the ruling unless it is unsupported by the record). Indeed, the affidavits provided no information whatsoever about "the skill, experience[,] and reputation" of the billing individuals.

¶ 35     And while the court effectively took judicial notice of what rates were reasonable based on its own experience with "similar billing rates in analogous cases," the court's own experience as to reasonableness was insufficient absent other evidence in the record.

17

*See Roget v. Grand Pontiac, Inc.*, 5 P.3d 341, 347 (Colo. App. 1999) ("It is improper for a trial court to take judicial notice of fees charged in the community when assessing the reasonableness of an award."); *L.D.G. v. E.R.*, 723 P.2d 746, 749 (Colo. App. 1986) (holding that the trial court's "general knowledge of the fees charged in the community was [not] sufficient to support its award absent any other evidence on that issue").[2]

¶ 36     In sum, the record as it presently stands does not support the district court's order reducing the amount of fees to a sum certain. Thus, we reverse the award of attorney fees and remand the case for further proceedings. On remand, the court may, in its discretion, take additional evidence as to mother's request for attorney fees. *See In re Marriage of Mohrlang*, 85 P.3d 561, 564 (Colo. App. 2003).

IV.     Mother's Request for Appellate Attorney Fees

¶ 37     Given father's partial success on appeal, we reject mother's contention that the appeal was frivolous. Consequently, we deny

---

[2] Because we are remanding the attorney fee issue, we need not address father's additional (and underdeveloped) contention that the district court erred by arbitrarily reducing the lodestar amount by only twenty percent.

her request for appellate attorney fees under section 13-17-102, C.R.S. 2025.

¶ 38 Mother also requests an award of her appellate attorney fees under section 14-10-119, due to the alleged disparities between the parties' respective economic circumstances. Because the district court is better equipped to determine the factual issues regarding the parties' current financial resources, we direct the district court to address this request on remand. *See* C.A.R. 39.1; *In re Marriage of Schlundt,* 2021 COA 58, ¶ 54.

## V. Disposition

¶ 39 The portion of father's appeal concerning the order allocating parental responsibilities is dismissed. The order awarding mother $79,822 in attorney fees is reversed, and the case is remanded for further proceedings consistent with this opinion. On remand the district court shall address mother's request for appellate attorney fees under section 14-10-119. Those portions of the judgment not challenged on appeal remain undisturbed.

JUDGE LUM and JUDGE MOULTRIE concur.